SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Paul Garrity (PG3492)
pgarrity@sheppardmullin.com
30 Rockefeller Plaza
New York, NY 10112
Telephone:  212-653-8700
Facsimile:  212-653-8701

JAMES M. CHADWICK, (*pro hac vice* to be filed)
jchadwick@sheppardmullin.com
TENAYA RODEWALD, (*pro hac vice* to be filed)
trodewald@sheppardmullin.com
379 Lytton Avenue
Palo Alto, California 94301
Telephone:  650-815-2600
Facsimile:  650-815-2601

*Attorneys for Plaintiff*
*E\*TRADE FINANCIAL CORPORATION*

JUDGE RAMOS

15 CV 2174

MAR 23 2015

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| E\*TRADE FINANCIAL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>MARVASOL, INC., d/b/a, LASTPASS, a Delaware corporation;<br><br>Defendant. | Civil Action No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff E\*TRADE Financial Corporation ("E\*TRADE") alleges as follows:

### NATURE OF THE CASE

1.  This is an action seeking injunctive relief and damages for unfair competition, false designation of origin, and false endorsement (15 U.S.C. §§ 1114(1), 1125(a)), trademark infringement (15 U.S.C. §§ 1114(1), 1125(a)), and trademark dilution (15 U.S.C. § 1125(c)) under the federal Lanham Act, and for injury to business reputation and trademark dilution and deceptive trade practices under the statutes and common law of the State of New York.

2. This action arises from Defendant's adoption of trademark designs that are virtually identical to E*TRADE's famous and distinctive logo, which has gained widespread public recognition and enormous goodwill. E*TRADE has spent over two decades and hundreds of millions of dollars building the recognition and strength of its famous and distinctive logo and establishing its reputation. Defendant's actions usurp the benefit of E*TRADE's investment and allow Defendant to profit from the fame and goodwill of E*TRADE's logo. Defendant's use of its design infringes E*TRADE's trademarks, and will lead consumers to believe that E*TRADE endorses or approves Defendant's products and services, which E*TRADE does not. Defendant's continued use of its infringing design also impairs the distinctiveness of E*TRADE's logo and harms E*TRADE's hard-earned reputation and goodwill.

## JURISDICTION AND VENUE

3. The causes of action in the Complaint arise under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and New York law. This Court has original subject matter jurisdiction over the Lanham Act claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has jurisdiction pursuant to 28 U.S.C. § 1367 and the principles of supplemental jurisdiction over Plaintiff's claims for injury to business reputation, trademark dilution, and deceptive trade practices under the statutes and common law of the State of New York.

4. This Court has personal jurisdiction over Defendant in this action because Defendant continuously and systematically conducts, transacts, and solicits business in New York and this District. Defendant distributes, promotes, and sells software and services that are the subject of this Complaint to consumers in this state and District, including through Defendant's interactive and commercial website and third-party websites that display and utilize the infringing designs that are the subject of this Complaint. Defendant also enters into and maintains long-term, commercial service relationships with consumers in this State and District. For example, Defendant transmits its software and mobile applications displaying the infringing designs that are the subject of this Complaint to consumers in New York and this District, and these consumers routinely access, interact with and utilize Defendant's internet-based and

"cloud" services using Defendant's computer software and mobile applications. In addition, Defendants have committed tortious acts alleged herein within the State of New York and this District, including by advertising, promoting and selling their products and services utilizing the infringing designs within this State and District, and the events giving rise to the claims alleged in this Complaint had their primary effects in this District. Finally, Defendant has committed tortious acts described in this Complaint in the State of New York, those acts have caused injury to Plaintiff within the state and this District, Defendant regularly does or solicits business and derives substantial revenue from Defendant's goods used and services rendered within New York and this District, and Defendant expected or should reasonably have expected the acts alleged herein to have consequences in the State of New York and this District. N.Y. C.P.L.R. § 302(a).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant is subject to personal jurisdiction in this District, because a substantial portion of the events at issue have arisen and will arise in this District, and because E*TRADE is suffering harm in this District.

## THE PARTIES

6. E*TRADE is a Delaware corporation with its principal place of business at 1271 Avenue of the Americas, 14th Floor, New York, New York 10020.

7. On information and belief, Defendant Marvasol, Inc., d/b/a LastPass ("LastPass") is a Delaware corporation with a place of business at 8315 Lee Highway, Suite 501, Fairfax, Virginia 22031.

## FACTUAL BACKGROUND

### E*TRADE's Business and Its Famous Mark

8. E*TRADE is a leading financial services company, providing consumers with innovative and easy-to-use, password-protected online and mobile brokerage, investment, and banking solutions. E*TRADE's services are provided to consumers online through its website and mobile applications, and through its network of customer representatives and investment

advisors available by phone and in-person at its 30 retail branches located throughout the United States. Customers access E*TRADE online and through mobile applications using passwords.

9.  E*TRADE was founded in 1982 and was a pioneer in the field of internet-based investment services for individuals. E*TRADE executed the first-ever electronic trade by an individual over thirty years ago. E*TRADE went public in 1996 and trades on the NASDAQ market under the trading symbol ETFC. As one of the first internet-based discount brokerage and investment services, E*TRADE and its recognition have grown along with the Internet.

10. By 2008—before Defendant began even doing business, and well before Defendant began its infringing activity—E*TRADE had over 4.3 million customer accounts and more than 50 billion dollars in customer assets. As of 2014, E*TRADE manages over 4.7 million customer accounts and 281 billion dollars in customer assets. These customers are located in every state of the United States.

11. E*TRADE is the owner of the famous trademark of an asterisk design as shown below (hereinafter, the "Asterisk Logo"):



The Asterisk Logo comprises converged arrows forming an asterisk design with six points.

12. E*TRADE began using the Asterisk Logo in interstate commerce in connection with its services no later than 1998. Over the last twenty five years, E*TRADE has continuously used the Asterisk Logo in interstate commerce in connection with its products and services. The Asterisk Logo is often displayed in the colors purple and green and in black and white. In addition, reinforcing the association of the Asterisk Logo with E*TRADE's name and services, E*TRADE has since its inception incorporated an asterisk into the company's name. Examples of such uses include the following:

# E*TRADE  E✱TRADE  E TRADE

13. As discussed below, E*TRADE has incontestable registrations for the Asterisk Logo. Moreover, because E*TRADE has been using the Asterisk Logo to brand its goods and services since 1998, E*TRADE has common law trademark rights in the Asterisk Logo as well. Among other things, E*TRADE's business is based on providing password-protected, on-line investment, brokerage, and banking software and services to consumers. E*TRADE also provides its services to consumers via mobile software applications that access E*TRADE's services using passwords. E*TRADE has provided all of its online software and services and its mobile internet applications under the Asterisk Logo since 1998, and therefore has established common law rights in the Asterisk Logo in connection with E*TRADE's online and mobile computer and software products and services.

14. Furthermore, E*TRADE owns the following United States trademark registrations for the Asterisk Logo:

| Mark | Registration No. | Registration Date | International Classes |
|---|---|---|---|
| ➔ | 2282831 | October 5, 1999 | 36 |
| (Mark is lined for the colors purple and green) | 2452692 | May 22, 2001 | 16, 25, 35, 36, 38, 41, and 42 (note Class 9 deleted at time of renewal) |

True and correct copies of the trademark registration certificates for the above listed trademarks are attached as **Exhibit A** to this Complaint.

15.     E*TRADE's trademark registrations listed above are valid, subsisting, and in full force and effect. In addition, the trademark registrations listed above are also incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, and thus serve as conclusive evidence of the validity of E*TRADE's Asterisk Logo, pursuant to 15 U.S.C. § 1115(b).

16.     Used in connection with E*TRADE's goods and services, the Asterisk Logo is arbitrary and fanciful and therefore inherently distinctive, and protectable without the need to show secondary meaning. Moreover, because E*TRADE's registrations are incontestable, the Asterisk Logo enjoys a conclusive presumption of distinctiveness. In any event, the Asterisk Logo has acquired secondary meaning. The Asterisk Logo is associated in the public's mind with E*TRADE's goods and services as distinguished from goods and services sold by others. The Asterisk Logo is distinctive for this reason as well.

17.     Moreover, the Asterisk Logo is famous and widely recognized by the general consuming public of the United States as identifying E*TRADE.

18.     The Asterisk Logo became famous well before Defendant began using the single-asterisk designs that are the subject of this Complaint. On information and belief, Defendant was founded in 2008. However, on information and belief, Defendant did not start using the single-asterisk designs that are the subject of this Complaint until much later.

19.     E*TRADE was one of the first companies to provide online brokerage and investment services for individuals, and E*TRADE has garnered widespread fame and popularity ever since. For example, over the last decade, E*TRADE has engaged in billions of dollars of transactions for its products and services under the Asterisk Logo, in every state in the United States. By 2008, when Defendant was apparently founded, and well before Defendant began the wrongful activity alleged herein, E*TRADE had made billions in revenues under the Asterisk Logo.

20.     Similarly, E*TRADE has created investment accounts for millions of customers over the last decade, in every state and region of the United States. Each of these investment accounts was provided through websites and software and mobile applications branded with the

SMRH:435505084.3                                -6-
                                                                                                    19PS-143215